UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                          Case No. 8:15-cr-365-T-33JSS

ALLEN A. ENGLISH
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Defendant's Motion to Suppress. (Dkt. 26.) In the motion, Defendant, who has been charged with being a felon in possession of ammunition, seeks to suppress the ammunition found on his person during a pat-down search by a police officer in response to a suspected burglary. Specifically, Defendant argues that the search was illegal because it was not supported by reasonable suspicion and because Defendant did not consent to the search of his person. In response, the Government contends that the search was lawful. (Dkt. 31.) For the reasons that follow, the Court recommends that Defendant's Motion to Suppress be denied.

## INTRODUCTION

The Court held an evidentiary hearing on this matter on January 22, 2016. (Dkt. 34.) During the hearing, Tampa Police Department Officer Orlando Gudes, who performed the pat-down search, and Officer William Fair, who investigated the suspected burglary, testified on behalf of the Government. The Government introduced as evidence the audio recording of the 911 call and police dispatch call regarding the suspected burglary to which the officers responded.

At the hearing, Defendant stipulated to the legality of the initial stop of Defendant, and the Government withdrew its argument that Defendant voluntarily consented to the search of his person after the initial stop. Therefore, the sole issue before the Court is whether the pat-down

search of Defendant was lawful and thus whether the evidence seized as a result of the pat-down

search should be suppressed.

## BACKGROUND

On June 29, 2015, at 6:37 a.m., an individual placed an emergency call to report a suspected

burglary in downtown Tampa, Florida.  The caller reported witnessing a white male wearing blue

jeans, a red-orange shirt, and a motorcycle helmet attempting to enter several vehicles on the

property of two auto shops on North Florida Avenue and Woodlawn Avenue.  Upon receiving the

emergency call, the police dispatcher was able to trace the caller's number, obtain the caller's

identity, and record the call.  The police dispatcher then relayed the information to Officer Gudes,

who had been patrolling the area.  Officer Gudes proceeded to the location provided by the

dispatcher at about 6:39 a.m. and observed a white male wearing blue jeans, red-orange shirt, and

motorcycle helmet.

Officer Gudes arrived on the scene in his patrol car and then exited the car to approach the

individual, later identified as Defendant Allen A. English.  Upon seeing Officer Gudes, Defendant

began walking toward him.  Officer Gudes was the first officer to arrive on the scene.  The

emergency lights on Officer Gudes' patrol car were on, and Officer Gudes approached Defendant

without drawing his weapon.  As Defendant approached, Officer Gudes noticed a bulge in the

pocket of Defendant's pants.

Officer Gudes believed the bulge he observed in Defendant's pocket could have been a

weapon and he was concerned for his safety.  Defendant was wearing a motorcycle helmet with

no motorcycle in sight.  Defendant was also acting jolly and jittery.  Based on Officer Gudes'

experience, Defendant was found in a high-crime area with a high homeless population.  Officer

Gudes testified that in his experience some homeless individuals have mental health issues that

may result in unpredictable and possibly dangerous behavior.  Officer Gudes believed Defendant's behavior was consistent with a potential mental health issue, which heightened his concern for his safety.

Officer Gudes asked Defendant if he could speak to him about a suspected burglary that had been reported and told Defendant that he matched the description of the reported suspect. Officer Gudes told Defendant that he needed to pat Defendant down for Officer Gudes' safety, to which Defendant responded by walking to Officer Gudes' patrol car and placing his hands on the trunk of his patrol car.  Officer Gudes then proceeded to perform a pat-down search of Defendant's outer clothing.

During the pat-down search, Officer Gudes felt a bulge on the outside of Defendant's front pants pocket.  Unable to determine what the bulge was and concerned that the bulge was a weapon, Officer Gudes reached into Defendant's front pocket and removed the item causing the bulge, which consisted of a purple Crown Royal® bag with seven nine-millimeter bullets inside, each measuring about one inch in length.  Upon finding the bullets, Officer Gudes detained Defendant by placing him in the back seat of his patrol car.  While Defendant was detained, Officer Gudes conducted a background check of Defendant and discovered that Defendant had prior felony convictions and had failed to register as a career criminal.  Officer Gudes then arrested Defendant for possessing ammunition as a felon and for failing to register as a career criminal.

After Defendant's arrest, Officer Fair, who was an acting detective at the time, arrived on the scene at approximately 8:18 a.m. to investigate the suspected burglary.  Officer Fair began his investigation by speaking with the owners of the two auto shops where Defendant was allegedly observed and reviewing the surveillance footage from one of the shops.  The surveillance footage showed a man wearing a motorcycle helmet open a car door and exit the car.  Officer Fair then

briefly spoke to Defendant, who was still in Officer Gudes' patrol car. Defendant refused to speak to Officer Fair at length. In his report, Officer Fair described Defendant as incoherent, as he appeared intoxicated or under the influence of drugs.

On September 9, 2015, a grand jury indicted Defendant for possessing ammunition as a felon in violation of 18 U.S.C. § 922(g). (Dkt. 1.) Defendant was arrested on October 2, 2015, and detained pending trial. (Dkts. 7, 13.) On December 16, 2015, Defendant filed the instant Motion to Suppress, seeking to suppress the evidence of bullets seized during the search. (Dkt. 26.)

## APPLICABLE STANDARDS

The Fourth Amendment protects individuals from unreasonable search and seizure. U.S. Const. amend. IV; *United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011). Generally, absent consent, a police officer must obtain a warrant supported by probable cause to justify a search under the Fourth Amendment. *United States v. Hollins*, 336 F. App'x 921, 922 (11th Cir. 2009). Evidence obtained in violation of the Fourth Amendment must be suppressed. *Jordan*, 635 F.3d at 1185. However, an officer may conduct a brief, warrantless, investigatory stop—also called a *Terry* stop—of an individual without probable cause when the officer has a reasonable suspicion that the individual was involved in, or is about to be involved in, criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *United States v. Heard*, 367 F.3d 1275, 1278 (11th Cir. 2004).

To determine whether reasonable suspicion exists, the court must evaluate the totality of the circumstances to determine whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. *United States v. Cortez*, 449 U.S. 411, 417–18 (1981). Reasonable suspicion is a less demanding standard than probable cause and requires "at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119,

4

123 (2000).   This evaluation allows police officers to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them."  *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

Once an officer has legitimately stopped an individual, the officer may conduct a pat-down search of the individual if the officer has reason to believe his or her own safety or the safety of others is at risk.  *United States v. Griffin*, 696 F.3d 1354, 1359 (11th Cir. 2012).  To establish reasonable belief in this context, the standard to be applied is whether a reasonably prudent person in the circumstances would be entitled to believe his or her safety or that of others is in danger.  *United States v. White*, 593 F.3d 1199, 1202–03 (11th Cir. 2010).

## ANALYSIS

It is undisputed that the initial stop of Defendant was constitutionally permissible.  Based on the corroborated emergency call, the presence of Defendant in a high-crime area, the nature of the suspected offense, Defendant's peculiar behavior, and the presence of a visible and suspicious bulge on Defendant's outer clothing, Officer Gudes reasonably suspected that Defendant was involved in the commission of a burglary.  *See Wardlow*, 528 U.S. at 124 (finding that an individual's presence in a high-crime area is a relevant contextual consideration in evaluating reasonable suspicion); *United States v. Hensley*, 469 U.S. 221, 232 (1985) (finding that an officer may rely on information provided by a police bulletin to justify a *Terry* stop); *United States v. Darling*, 619 F. App'x 877, 879 (11th Cir. 2015) (finding that a corroborated emergency call may give rise to reasonable suspicion); *United States v. Matchett*, 802 F.3d 1185, 1193 (11th Cir. 2015) (finding that the nature of the offense and an officer's reasonable inferences about the offense may give rise to reasonable suspicion); *United States v. Fields*, 178 F. App'x 890, 892 (11th Cir. 2006) (finding that an individual's behavior, especially nervous or evasive behavior, is relevant to

determining reasonable suspicion); *United States v. Hunter*, 291 F.3d 1302, 1306 (11th Cir. 2002) (finding that the presence of a visible, suspicious bulge on an individual may give rise to reasonable suspicion).

As reasonable suspicion supported the stop, Officer Gudes was entitled to briefly detain Defendant to investigate whether his behavior was innocent or involved criminal activity. *United States v. Lester*, 477 F. App'x 697, 700 (11th Cir. 2012). Having established that the investigatory stop of Defendant was lawful under the Fourth Amendment, the Court must next address whether Officer Gudes was reasonably justified in conducting a pat-down search of Defendant.

## A. Pat-Down Search

Once an officer has legitimately stopped an individual, the officer may conduct a pat-down search of the individual if the officer has reason to believe that his or her own safety is at risk. *White*, 593 F.3d at 1202. In evaluating whether a pat-down search of an individual is reasonable, the standard to be applied is whether a reasonably prudent person in the circumstances would be entitled to believe his or her safety or that of others is in danger. *Id.* at 1202–03. This involves an objective inquiry requiring evaluation of the totality of the circumstances. *Matchett*, 802 F.3d at 1192. Great deference is given to the judgment of trained law enforcement officers "on the scene." *United States v. Chanthasouxat*, 342 F.3d 1271, 1276 (11th Cir. 2003).

Considering the circumstances in their totality, the Court finds that Officer Gudes had reason to believe that his safety or the safety of others was in danger. At the time of this encounter, Officer Gudes had been a police officer for twenty-six years and was a senior officer. Officer Gudes testified at the hearing that he conducted the pat-down search for his safety and believed that Defendant could have been carrying a weapon. Notably, the applicable law on this issue does not require the court to assess the degree to which an officer fears for his safety. *See United States*

*v. Bonds*, 829 F.2d 1072, 1074 (11th Cir. 1987) (stating that the standard for a pat-down search requires an objectively reasonable fear).  Rather, the standard is whether a reasonably prudent person in the circumstances would be entitled to believe his or her safety or that of others is in danger.  *White*, 593 F.3d at 1202–03.

Officer Gudes was warranted in searching Defendant to ensure his safety.  First, as discussed above, Officer Gudes had an objectively reasonable suspicion that Defendant was engaged in criminal activity, thus supporting his belief that Defendant may have been armed.  *See United States v. Blackley*, 439 F. App'x 803, 805 (11th Cir. 2011) ("When an officer reasonably suspects that criminal activity may be afoot, and that the person with whom the officer is dealing may be armed and presently dangerous, the officer is entitled to conduct a pat-down of such person in order to determine whether he is in fact armed.").  Specifically, Officer Gudes responded to a report of an ongoing burglary in a high-crime area.  Based on Officer Gudes' training and experience, Officer Gudes reasonably concluded that Defendant could have been carrying a weapon, as many burglaries often involve the use of weapons or tools that can be used as weapons. *See Matchett*, 802 F.3d at 1193 (considering an officer's knowledge, based on experience, that burglars frequently carry weapons in determining whether a pat-down search was reasonable); *United States v. Salter*, 255 F. App'x 355, 360 (11th Cir. 2007) (considering the high-crime area where the defendant was found in determining whether a pat-down search was reasonable).

Second, Officer Gudes was concerned by Defendant's appearance and behavior, as Defendant was wearing a motorcycle helmet and was unusually jolly, jittery, and cooperative.  *See Terry*, 392 U.S. at 24 (considering the defendant's suspicious behavior in performing a pat-down search).  Based on his training and experience, Officer Gudes testified that Defendant was located in an area with a high homeless population, which he believed to be potentially comprised of some

individuals with mental health issues that sometimes present unpredictable and dangerous behavior.  Based on his experience, Officer Gudes attributed Defendant's peculiar behavior to a possible mental health issue, which heightened his concern for his safety.

Finally, Officer Gudes observed a visible, suspicious bulge emerging from Defendant's pocket as Defendant approached.  Upon observing the bulge, Officer Gudes testified that he thought Defendant could have been carrying a weapon.  *See Pennsylvania v. Mimms*, 434 U.S. 106, 112 (1977) (finding that a bulge in the defendant's jacket permitted the officer to conclude that the defendant was armed and thus posed a serious and present danger to the officer's safety). Although Officer Gudes was not absolutely certain that Defendant was carrying a weapon, the reasonable belief standard does not require definitive evidence of a weapon or absolute certainty that an individual is armed.  *Griffin*, 696 F.3d at 1359.  Further, although Officer Gudes approached Defendant without back-up officers at his aid, the Court does not find that this is inconsistent with an officer's concern for his safety.  Indeed, courts have found that officers approaching a suspect alone may have a heightened concern for their safety.  *See Matchett*, 802 F.3d at 1193 (finding that the officer was alone during the encounter, which bolstered his reasonable concern for his safety); *Griffin*, 696 F.3d at 1359 (considering the fact that the officer was alone, at night, in a high-crime area, and had no specific facts about the defendant other than that he had tried to steal some items of clothing).

Based on a totality of the circumstances, the Court finds that Officer Gudes was justified in conducting a pat-down search of Defendant.  The factors articulated above indicate that Defendant was potentially involved in the commission of a burglary, Defendant was found in a high-crime area in the early hours of the morning, Defendant exhibited concerning behavior, and a visible and suspicious bulge was noticeable on Defendant's outer clothing.  Under these

circumstances, a reasonably prudent person in Officer Gudes' position would be entitled to believe his or her safety or that of others was in danger. *See United States v. Puglisi*, 723 F.2d 779, 789 (11th Cir. 1984) (stating that the standard requires consideration of the facts taken together, not in isolation). Accordingly, the limited search for weapons was reasonable.

**B.      Scope of the Search**

Although an officer may be justified in patting down or frisking an individual, the officer may exceed the scope of a protective search by impermissibly extending the search. *Minnesota v. Dickerson*, 508 U.S. 366, 378 (1993). However, if, during a pat-down search, an officer feels a concealed object that he or she reasonably believes may be a weapon, then the officer is entitled to ensure his or her safety by searching the area containing the concealed item. *United States v. Clay*, 483 F.3d 739, 743–44 (11th Cir. 2007).

As discussed above, Officer Gudes was justified in conducting a pat-down search of Defendant upon observing a bulge in Defendant's pocket. *See United States v. Samuel*, 580 F. App'x 836, 841 (11th Cir. 2014) (finding that the police officer's observation of a bulge permitted a pat-down search to ensure the officer's safety). Once Officer Gudes saw and felt a bulge in Defendant's pocket during the pat-down search, Officer Gudes was justified in searching inside the pocket and bag for weapons. *See United States v. Sanders*, 394 F. App'x 547, 549 (11th Cir. 2010) (finding that the officers were justified in searching the defendant's pockets for weapons upon seeing and feeling bulges in the defendant's pockets during a pat-down search). At the hearing, Officer Gudes credibly testified that he believed the bulge could have contained a weapon and was concerned for his safety. Officer Gudes further testified that he could not confirm that the concealed item was not a weapon, and therefore could not secure his safety, until he removed the bulge and inspected its contents. *See Clay*, 483 F.3d at 743–44 (finding that the officer's

continued search into the defendant's pockets after the initial pat-down search was reasonable and justified to ensure the officer's safety because the officer thought the object in the pocket might have been a weapon or a tool used as a weapon).

Accordingly, the Court finds that the extent of Officer Gudes' search was consistent with the purpose of protecting himself.  *United States v. Aldridge*, 719 F.2d 368, 372 (11th Cir. 1983) (finding that the officer was entitled to take reasonable measures to neutralize the threat of physical harm).

## C.    Inevitable Discovery Doctrine

Alternatively, the Government argues that the inevitable discovery doctrine precludes suppression because the bullets would have been inevitably discovered as a result of a search incident to arrest for burglary.

Generally, the exclusionary rule dictates that evidence obtained in violation of the Fourth Amendment may not be used in a criminal prosecution against the victim of the illegal search and seizure.  *United States v. Stilling*, 346 F. App'x 458, 459 (11th Cir. 2009).  Under the inevitable discovery exception, however, the government may introduce evidence that was obtained by an illegal search if the government can establish a "reasonable probability that the evidence in question would have been discovered by lawful means."  *Jefferson v. Fountain*, 382 F.3d 1286, 1296 (11th Cir. 2004).  The government must also establish that "the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct."  *Id.*  To establish active pursuit, the government need not show that police had already planned the particular search that would obtain the evidence.  *United States v. Johnson*, 777 F.3d 1270, 1274 (11th Cir. 2015).  Rather, the government must establish that the police would have discovered the evidence "by virtue of ordinary investigations of evidence or leads already in their possession."

10

*Id.* (quoting *United States v. Virden*, 488 F.3d 1317, 1323 (11th Cir. 2007) (internal quotations omitted)).

In this case, the Government argues that Defendant's arrest for burglary would have resulted in a search incident to arrest and, in turn, would have yielded the discovery of the bullets. The Fourth Amendment permits warrantless arrests in public places where an officer has probable cause to believe that a felony has occurred. *United States v. Goddard*, 312 F.3d 1360, 1362 (11th Cir. 2002). For an arrest to be supported by probable cause, the arresting officer must have reasonable belief, under the totality of the circumstances, that the suspect had committed or was committing a crime. *United States v. Ochoa*, 402 F. App'x 478, 483 (11th Cir. 2010). Following an arrest supported by probable cause, police officers may search an arrested person and the area into which the person might reach to grab a weapon or evidentiary items and may open containers found within that area. *United States v. Roper*, 681 F.2d 1354, 1358 (11th Cir. 1982).

Here, Officer Gudes was dispatched to the scene of an ongoing burglary, a third-degree felony under state law. § 810.02(1)(b)(4)(b), Fla. Stat. (2015). Once Officer Gudes arrived on the scene, he identified Defendant as the individual matching the description of the reported suspect, approached Defendant, and performed a pat-down search of Defendant's outer clothing. As discussed above, the pat-down search led to the discovery of several bullets. After finding the bullets, Officer Gudes detained Defendant and conducted a background search of Defendant, which indicated that Defendant had multiple felony convictions and had failed to register as a career criminal. Officer Gudes then arrested Defendant for possessing ammunition as a felon and for failing to register as a career criminal. §§ 775.261(8)(a), 790.23(1)(a), Fla. Stat. (2015). Once under arrest, Officer Fair arrived on the scene to investigate the burglary for which Defendant was initially suspected and for which Defendant was ultimately arrested and charged.

Probable cause to arrest exists when police officers have facts and circumstances within their knowledge that sufficiently warrant a reasonable belief that a suspect committed or was committing a crime. *Reid v. Henry Cty., Ga.*, 568 F. App'x 745, 748 (11th Cir. 2014). Here, Officer Fair reviewed the surveillance tape provided by one of the auto shops where Defendant was located and observed a man wearing a motorcycle helmet enter a car belonging to another person and on the property of a local business. Officer Fair was able to clearly identify the individual on the tape after observing Defendant in Officer Gudes' patrol car. Upon questioning the owner of the car, Officer Fair learned that a motorcycle helmet and several other items were missing from the car and was able to confirm that those items were the same items in Defendant's possession. *See Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) ("[T]he corroboration of the details of an informant's tip through independent police work adds significant value to the probable cause analysis."). Officer Fair then charged Defendant with burglary of a conveyance. Based on the facts surrounding the investigation of Defendant, the Court finds that probable cause supported Defendant's arrest for burglary.

In regard to the inevitable discovery, the investigation into the burglary was the lawful means that made discovery inevitable, as there was an active investigation into Defendant's involvement in the burglary prior to the pat-down search. Once arrested for burglary, there was a reasonable probability that the bullets would have been found in a routine search of Defendant following his arrest. *See United States v. Rhind*, 289 F.3d 690, 694 (11th Cir. 2002) (finding that the contents of a bag the defendant was carrying would nevertheless have been admissible because the officers inevitably would have discovered the evidence in a routine inventory search following the defendant's arrest). In other words, if one were to subtract the pat-down search from the equation, Defendant would have been arrested for the underlying burglary and, once arrested,

would have been searched incident to arrest, which would have produced the bullets.  Therefore, the inevitable discovery doctrine prevents the suppression of the bullets found as a result of the search had the search been illegal.  Accordingly, it is

      **RECOMMENDED** that Defendant's Motion to Suppress (Dkt. 26) be **DENIED.**

      **IT IS SO REPORTED** in Tampa, Florida on February 5, 2016.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

      A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable Virginia M. Hernandez Covington
Counsel of Record